UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-196-H

DONALD CORLEY                                                    PLAINTIFF

V.

COMMONWEALTH INDUSTRIES, INC.                                  DEFENDANTS
CASH BALANCE PENSION PLAN, et al

**MEMORANDUM OPINION**

Plaintiff, Donald Corley, filed suit under the Employee Retirement Income Security Act ("ERISA") against his former employer, Commonwealth Industries, Inc. ("Commonwealth"), Commonwealth Industries, Inc. Cash Balance Plan ("the Plan") and the benefits committee for the Commonwealth Industries, Inc. Cash Balance Plan ("the Committee") (collectively referred to as "Defendants"). Plaintiff complains that Defendants improperly amended the Plan in 1994 and 1998, resulting in lower benefits for him. He also alleges that Defendants improperly calculated his benefits by excluding certain benefits that had accrued prior to the amendments. Plaintiff received his benefits in a lump sum after his retirement on August 31, 2001. He now seeks injunctive and "other equitable" relief under ERISA's enforcement provisions, 29 U.S.C. § 1132(a)(1)(B) and (a)(3).

Corley's claims are all that remain of the larger dispute involving additional parties and issues. The Court has previously dismissed the other claims on statute of limitations grounds. *See Fallin v. Commonwealth Indus., Inc. Cash Balance Plan*, 521 F. Supp.2d 592 (W.D. Ky.

2007).[1] The parties have filed cross motions for summary judgment.

## I.

Plaintiff began his employment at Commonwealth in 1969.  The company operated a conventional defined benefit plan governed by ERISA, and Plaintiff became a member of that Plan. Defendants amended the Plan once in 1994 and then again on January 1, 1998.  The terms of the Plan before the 1994 amendment are referred to as the 93-Plan, while the terms of the plan before the 1998 amendment are referred to as the 97-Plan. With the 1998 amendment, Commonwealth Industries took action intended to convert its defined benefit plan into the cash balance plan at issue in this case. ERISA governs such cash balance plans and the conditions under which such a conversion is permissible.  *See* Robert Rachal, Russell L. Hirschhorn, and Nicole Eichberger, *Cases and Issues in Cash Balance Plan Litigation*, 22 Lab. L. 19 (2006).

After he retired in 2002, Plaintiff elected to receive his Plan retirement benefits as a lump sum payment of $135,265.68 in lieu of an annuity based on the cash balance in his hypothetical account.  Plaintiff contends that he was entitled to a greater lump sum amount because he had accrued certain early retirement benefits that Defendants did not include in his benefit calculation.  On September 20, 2006, Plaintiff filed an administrative claim for the additional benefits.  Defendants denied that claim and also denied all his subsequent appeals.  In doing so, Defendants stated that Plaintiff had accrued no benefits from either the 93-Plan or the 97-Plan

---

[1] Plaintiff advanced three additional claims in his complaint.  Those claims pertained to a level income option, partial termination of the Plan, and the cash balance formula.  The Court has already ruled on the level income option claim.  *Fallin v. Commonwealth Indus., Inc. Cash Balance Plan*, 521 F.Supp.2d 592 (W.D. Ky. 2007).  As to the other two claims, Plaintiffs' motion for summary judgment says the claims should be "considered withdrawn."  Since Plaintiff has failed to produce evidence to rebut Defendants' motion for summary judgment on those claims, the Court will order the partial termination claim and the cash balance formula claim dismissed with prejudice.  *See* Fed. R. Civ. P. 56(e)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

that should have been included in his current retirement benefit.  Thus, he was not due any additional lump sum amounts.  This federal lawsuit followed.

## II.

ERISA governs both Commonwealth's older more conventional defined benefit plans and the newer Plan.  This Court reviews an ERISA plan administrator's decision under an arbitrary and capricious standard where the plan grants the administrator discretion in the decision making process. *Wendy's Int'l, Inc., v. Karsko*, 94 F.3d 1010,1012 (6th Cir. 1996) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). Here the Plan granted the administrator discretion to determine benefits and to properly amend the plan according to its terms.  For the administrator to reduce benefits would require a legal determination that the current plan benefits had not accrued.  The Court also reviews Plaintiff's legal arguments that the amended plan violates ERISA under an arbitrary and capricious standard.  *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 709-12 (6th Cir. 2000).[2]

In this action, Plaintiff now claims that Defendants, (1) improperly reduced his accrued benefits, (2) improperly amended the Plan, (3) failed to provide adequate notice of the amendment, and (4) improperly calculated his early retirement benefit.  Each of the final three claims relate to the first.

## III.

Plaintiff claims that both the 93-Plan and the 97-Plan entitle him to certain benefits that

---

[2] As the following analysis demonstrates, the standard of review would not alter the result of the Court's analysis.

3

should be treated as accrued.[3]  Plaintiff claims that these accrued benefits should have been included in calculating his lump sum benefits.

ERISA's anti-cutback rule prohibits a reduction of accrued benefits. 29 U.S.C. § 1054(g)(1).[4]  Furthermore, a reduction in early retirement benefits is likely considered a reduction of accrued benefits in certain situations. 29 U.S.C. § 1054(g)(2).  Specifically, ERISA provides, "a plan amendment which has the effect of ... reducing an early retirement benefit ... with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits." 29 U.S.C. § 1054(g)(2).  Such a reduction violates ERISA.  This means that once a participant meets the conditions of the early retirement benefit, a company may not amend its plans to reduce the participant's early retirement benefit. *See Cattin v. General Motors Corp.*, 955 F.2d 416, 423-24 (6th Cir. 1992).  On the other hand, where a participant has not met the conditions of the early retirement benefit, a company may amend and reduce early retirement benefits for that participant. *Id.*

With that background, the Court looks at the specifics here.  Section 4.02 of the 93-Plan and Section 4.3 of the 97-plan did provide an early retirement benefit.  Both plans provided that the early retirement benefit was payable only to participants who met two requirements: (1) reach the age of fifty five (55) and (2) complete five years of credited service.  At the time of the various Plan amendments, Plaintiff had not yet reached fifty five (55) years old.  Therefore,

---

[3]To be clear, these benefits are not accrued benefits.  ERISA defines accrued benefits as commencing at normal retirement age. 29 U.S.C. 1002(23).  Early retirement benefits, such as those Plaintiff seeks, begin before normal retirement age and, as such, are not accrued benefits.

[4]ERISA's anti-cutback rule is a provision that states, "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan ... ."  Thus, by definition the right under the rule applies to accrued benefits.  29 U.S.C. § 1054(g)(1).

4

Plaintiff could not qualify for the early retirement benefits he now seeks because early retirement benefits accrue under ERISA only where the participant has satisfied its requirements prior to any amendment.  29 U.S.C. § 1054(g)(2); *Cattin v. General Motors Corp.*, 955 F.2d 416, 423-24 (6th Cir. 1992).  For the same reasons, the benefit is not subject to ERISA's anti-cutback rule.

Plaintiff relies on a Sixth Circuit case which purports to say that early retirement benefits may not be reduced, where the participant has not qualified for the benefit.  *See Rybarczyk v. TRW, Inc.*, 235 F.3d 975 (6th Cir. 2000).  The circumstances in *TRW*, however, are quite distinguishable from those here.  TRW's plan actually characterized the early retirement benefits as accrued benefits and the plan provided that accrued benefits could not be reduced. *Id.* at 984. It is tautological to say that a plan that prohibits a reduction in accrued benefits does not allow benefits that the plan characterizes as accrued to be reduced.  Here, unlike the plan in *TRW,* the Plan does not characterize the early retirement benefit as an accrued benefit.  Rather, it defines the early retirement benefit as a conditional benefit a participant becomes eligible for after satisfying the two requirements.  This difference accounts for the different result in the two cases.

Thus the Committee violated neither the terms of the Plan nor ERISA's anti-cutback provisions by excluding the early retirement benefit from the lump sum calculation.  Defendants' decision to exclude the early retirement benefit from the lump sum calculation was not arbitrary and capricious.  It was, in fact, correct.

IV.

Plaintiff makes several claims pertaining to the invalidity of the Plan's amendment process.  He argues that Defendants failed to provide the required notice of the amendments.

5

Plaintiff also claims that the 1994 and 1998 amendments are invalid because (1) the amendment procedure did not conform to the Plan, (2) the amendment violated ERISA and the Plan by reducing Plaintiff's accrued benefit in the form of his early retirement benefit, and (3) the amendment significantly reduced his future accruals.  The first issue is not properly before the Court[5] and the Court has already resolved the second issue.  Because the Court has determined that Plaintiff's early retirement benefits are not accrued benefits, the Committee could amend the Plan and even reduce non-accrued benefits without violating ERISA or the Plan.

As to Plaintiff's third contention, ERISA does require notice of amendments that purport to reduce the future accruals of his benefits. 29 U.S.C. § 1054(h).  Plaintiff claims that the Plan did reduce his future benefit accruals.  At the time in question, "[w]hether an amendment provides for a significant reduction in the rate of future benefit accrual for purposes of section 204(h) of ERISA is determined based on reasonable expectations taking into account the relevant facts and circumstances at the time the amendment is adopted." 26 CFR § 1.411(d)-6T (1997). Thus, whether the 1998 amendment required a 204(h) notice, depends upon the facts and circumstances surrounding the adoption of that amendment, rather than the circumstances surrounding Plaintiff's retirement.

The Court finds no evidence that at the time of the amendment Plaintiff had any reasonable expectation that the Plan provided for a significant reduction in the rate of future

---

[5]The issue of whether Defendants followed the proper procedure in amending the plan is not properly before the Court. Plaintiff did not plead the issue in his complaint. Plaintiff's complaint said, "[d]efendants have improperly amended the CICBP Plan effective January 1, 1994 and again January 1, 1998 to significantly reduce future benefit accruals and/or eliminate benefit options." (Compl. ¶ 45). This pleading did not put Defendants on notice that the amendment was challenged for procedural flaws. Rather it put Defendants on notice that they were alleged to have improperly amended the plan through an elimination of benefit options or a significant reduction in future accruals. Where a complaint references specific information, and only that information, Defendants are not put on notice of other conduct at issue. *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005).

accruals.  Rather at that time, Defendants credited 6% of his salary to the hypothetical account and applied an 5.81% interest rate to the balance of the account. Thus the Plan provided for a significant accrual of benefits.  In the first year of the Plan, Plaintiff accrued $8,825.70, a 9% increase in his hypothetical account balance.  Defendants then had no obligation to provide a 204(h) notice.

Consequently, the Court finds that neither the process of amendment nor the notifications related to it violate either ERISA or the Plan.  Thus, Defendants' denial of Plaintiff's claim was not arbitrary and capricious.

## V.

Plaintiff's final claim is that Defendants improperly calculated his lump sum benefits by failing to include the value of his early retirement benefits when calculating the lump sum and by improperly discounting his lump sum to present value.  Of course, in so far as Plaintiff relies on the accrual of early retirement benefits, the Court has already ruled on that issue.  The Court must discuss the calculation of benefits in greater depth.

## A.

Plaintiff alleges that Defendants improperly reduced his accrued benefit. Specifically, Plaintiff alleges that his accrued benefit in the form of a lifetime annuity reduced from $1,596.66 to $1,354.91 between September 1, 2001 and March 1, 2002. However, Defendants projected benefit amounts on the assumption that the variable interest rate would remain constant, as required by law. 26 C.F.R § 1.401(a)(4)-8(c)(3)(v)(B). Because Plaintiff's benefit was tied to a variable interest rate, and because the law requires Defendants to forecast benefits using a constant interest rate, any projection neither represents the promise of a particular benefit nor the

accrual of it.

True, the benefits projection statement did include the words, "benefit amounts as of that date are not subject to change."  However, such a statement does not fix the benefit amount at that level.  Otherwise, the participants' benefits must remain the same and could never *increase*.  Just as Plaintiff's projected benefits would increase as interest rates rose or as he earned additional benefit credits, his projected benefit would decrease as interest rates declined.  In fact, Plaintiff's projected benefit did increase between 1998 and 2001.

## B.

Finally, Plaintiff claims that Defendants improperly reduced his benefits by failing to perform a "whip-saw" calculation. A whip-saw calculation is so named because it requires the plan to project the participant's benefits forward to normal retirement age and then discount back to present value. In a defined benefit plan, the "normal form" of benefit is an annuity beginning at age 65. To take an early retirement benefit under the Plan, one must project benefits forward to retirement age and then discount to the present value.  Where the discount rate is different than the interest rate, the participant's benefit could be adversely affected.  If in discounting to present value, the Plan awards a lump sum less than the current balance of the hypothetical account, this amounts to a forfeiture of benefits, which is unlawful.  *Also see Esden v. Bank of Boston*, 229 F.3d 154, 159 (2nd Cir. 2000).

Plaintiff claims that Defendants improperly used his pre-age 65 mortality when discounting his projected benefit to present value. While a mortality table that includes pre-age 65 mortality is forbidden when calculating the discount rate of a fixed-interest cash balance plan, it is permissible when calculating the discount rate of a variable-interest cash balance plan, such

as the Plan. 29 C.F.R. § 1.401(a)(4)-8(c)(3)(iv)(C)(ix).  Furthermore, the prohibition on pre-age 65 mortality stems from the fact that a participant's beneficiary may collect the benefit if the participant dies early. *See West v. AK Steel Corp.*, 484 F.3d 395, 411 (6th Cir. 2007).  According to the Plan, the participant's beneficiary is entitled to the participant's hypothetical account balance, not to the participant's benefit.  The calculation of the present value then may use pre-age 65 mortality, because this does not affect the current hypothetical account balance, to which the participant's beneficiary would be entitled.  Thus Defendants applied the correct discount factor when discounting Plaintiff's projected benefit to present value.

During the appeals process, Defendants' actuaries calculated Plaintiff's benefits using the whip-saw approach. The actuaries found that using the whip-saw approach Plaintiff's benefits would result in a lump sum value of at most $130,189.25. This value is less than the $135,265.68 hypothetical account balance Plaintiff received. Here, Defendants paid Plaintiff the higher amount and thus no forfeiture occurred.  Therefore, Defendants' calculations appear to be correct and were certainly not arbitrary and capricious.

VI.

In sum, Defendants did not improperly amend the Plan, because in amending the Plan, Defendants did not reduce Plaintiff's accrued benefit. Furthermore, Defendants did not have to provide 204(h) notices, because the 1998 amendment did not reduce Plaintiff's accrued benefit or significantly reduce the rate of Plaintiff's future accruals. Finally, there was nothing arbitrary or capricious about the calculation of Plaintiff's early retirement benefit in the form of a lump sum distribution. Rather Defendants calculated Plaintiff's benefit pursuant to ERISA and the terms of the Plan.

9

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record