UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-196-H

DONALD CORLEY                                                                                              PLAINTIFF

V.

COMMONWEALTH INDUSTRIES, INC., *et al.*                           DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on motions arising from a remand by the Sixth Circuit Court of Appeals. Corley has filed a motion for summary judgment, and Defendants have filed a motion to dismiss Corley's complaint. In essence, the parties continue to dispute the lump sum amount due to Corley under his Commonwealth Industries Retirement Plan (the "Plan") in accordance with the Employee Retirement Income Security Act ("ERISA").

Several issues, both procedural and substantive, require the Court's attention. The Court has carefully reviewed the Sixth Circuit's opinion and has conducted several hearings with the parties to address various issues. The Court appreciates the assistance of counsel in helping to resolve these difficult issues. The Court will first set forth the exact circumstances which led us here and then address the parties' motions.

I.

Nine retirees filed this putative class action against their former employer Commonwealth Industries, Inc., its cash balance pension Plan, and its Benefits Committee

alleging underpayment in violation of ERISA. They argued that the Plan[1] failed to include an early retirement subsidy in its benefits calculations.

The Pre-1998 Plan allowed early retirement for employees who had completed five years of service and reached the age of 55, with benefits payable in monthly payments. In 1998, Commonwealth converted its plan into a cash balance Plan and introduced an additional lump sum payment option. Under the Plan, an account's initial cash balance was the value of the benefits each participant had accrued. All of the original plaintiffs elected to take their benefits in the form of a lump sum payment. Corley received his payment on March 1, 2002, and he filed an administrative claim challenging the amount of it. After he lost his administrative claim and appeal, he and the other plaintiffs filed suit. They claimed that after Defendants converted the Plan to a cash balance plan, it failed to give beneficiaries the full value of their accrued benefits, specifically the value of the pre-amendment accrued early retirement subsidy. *See Fallin v. Commonwealth Indus., Inc.*, 695 F.3d 512, 514 (6th Cir. 2012).

This Court granted Defendants' motion to dismiss eight of the plaintiffs' claims on statute of limitations grounds, leaving Corley as the sole Plaintiff. On December 3, 2008, this Court entered summary judgment in Defendants' favor, determining that the $135,265.68 lump sum payment Corley received was properly calculated. The plaintiffs appealed.

On August 23, 2012, the Sixth Circuit affirmed the dismissal of the eight other plaintiffs' claims but vacated and remanded the dismissal of Corley's claim.[2] *See id.* The Sixth Circuit found that the Benefits Committee's interpretation of the Plan's terms to not include an early retirement subsidy in Corley's lump sum payment was not arbitrary or capricious. *See id.* at 516.

---

[1] The "Plan" refers to the 1998 amended plan under which Corley received his benefits. Where the Court refers to the previous version of the plan, it will use "the Pre-1998 Plan."
[2] No class has been certified in this case. Because Corley is the sole remaining Plaintiff, the dismissal of his claim will resolve this action in its entirety.

2

The Sixth Circuit found further support for this position in a regulation promulgated by the Treasury Department: "if a plan instead defines the early-retirement benefit as 'the present value of the normal retirement annuity benefit'—which is what this plan does—then it need not include the subsidy." *Id.* at 516 (citing 26 C.F.R. § 1.411(a)–11(a)(2)). The result, therefore, is that Corley was entitled to the present value of the normal retirement benefit for his lump sum payment. *See id.*

It then turned to Corley's claim that the Benefits Committee's calculation of his lump sum payment violated ERISA's anti-cutback rule, which provides that a plan amendment shall not decrease a participant's "accrued benefit." 29 U.S.C. § 1054(g). The Sixth Circuit ruled that Corley's subsidy was accrued due to his satisfaction of the 5-year service condition before the Pre-1998 Plan was amended and the 55-yr-old age condition afterward. Thus, the Plan could not reduce his benefits attributable to pre-amendment service. *See Fallin*, 695 F.3d at 517.

The only question remaining was whether Defendants had actually improperly reduced Corley's benefits. A necessary threshold question was how to characterize the benefit Corley selected. The Sixth Circuit remanded to this Court, stating:

> On remand, the district court should consider whether the benefits payable to Corley under the relevant versions of the Plan constituted "an early retirement benefit" or "a retirement-type subsidy" which would be protected from elimination or reduction, or "an optional form of benefit" which would only be protected from elimination.

*Id.* Upon reviewing the mandate, this Court held an immediate conference on October 7, 2012. The Court remanded the matter to the Benefits Committee "for a full and fair review to comply with the ruling of the United States Court of Appeals" and removed the case from its docket pending further order.[3] The Court's intention was that Corley's benefit claim resume again.

---

[3] Contrary to Corley's assertion, the Court did not order Defendants to produce any benefit calculations.

That is exactly what appears to have occurred. On October 25, 2012, the Benefits Committee met, considered the Sixth Circuit's opinion, and reviewed its benefit calculations. On November 5, Defendants' counsel e-mailed Corley's counsel the Benefits Committee's resolution denying any adjustment in his lump sum payment, as well as letter adopted by the resolution (the "Mercer letter") analyzing Corley's claim.[4] The Mercer letter determined that Corley's benefits had not been impermissibly reduced in violation of ERISA's anti-cutback rule and attached supporting information, including a calculation of Corley's lump sum benefits. The e-mail also reiterated:

> Under the Cash Balance Plan that Mr. Corley sued upon, he has sixty (60) days to appeal the Benefits Committee's decision for a full and fair hearing pursuant to Section 17.2 of that Plan.

Quite amazingly, nothing more happened until February 25, 2013, when Corley's counsel sent a letter to the Benefits Committee purporting to submit his claim for a "full and fair review." He set forth numerous arguments why the Benefits Committee's calculation was incorrect. On April 25, 2013, the Benefits Committee rejected counsel's letter as an untimely appeal of its November determination of benefits but nevertheless reaffirmed that Corley's lump sum payment was correctly calculated.

Thereafter, the litigation resumed in this Court. Defendants moved to lift the Court's stay or restore the matter to the Court's docket and dismiss, and Corley moved to reopen. On July 23, 2013, the Court reopened the case and ordered that a complete administrative record be filed, noting that it had not yet determined whether Corley's appeal was timely and proper. On August 22, 2013, the Court held a conference and issued a briefing schedule on all remaining issues, which was completed on February 21, 2014.

---

[4] On October 19 and November 1, 2012, Corley's counsel asked Defendants' counsel for his benefit calculations. Defendants' counsel responded that he would not provide his own calculations and that he would forward the Benefits Committee's decision and the accompanying calculations as soon as it was available.

4

II.

The first question before the Court is whether Corley has perfected his appeal. The Court concludes that he failed to timely appeal the Benefits Committee's most recent decision. However, the Court further concludes that the normal ERISA exhaustion requirements are waived because Corley's challenge is most aptly characterized as a challenge to the legality of the Plan's calculation methodology under ERISA's anti-cutback provision.

The Court referred this matter to the Benefits Committee for a review of its determination and calculations in light of the Sixth Circuit decision. Defendants considered this to be a re-initiation of the benefit claim process, which involves a determination by the Benefits Committee and an appeal for a "full and fair review" at the participant's request before a federal court appeal is granted. To this Court, it is mystifying that Corley did not appeal the Benefits Committee's decision within the sixty days he was given. The Court finds no reasonable grounds for a misunderstanding. Corley has failed to perfect his appeal.

Corley argues that exhaustion would have been futile.[5] Exhaustion of administrative remedies is a matter of judicial discretion, but "a court is obliged to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 413 (6th Cir. 1998). A plaintiff must demonstrate a "clear and positive indication of futility." *Id.* The administrative futility doctrine has chiefly been applied: (1) when the plaintiff's suit is directed to the legality of the plan, not its mere interpretation; and (2) when the defendant does not possess

---

[5] Corley also correctly points out that he is not required to exhaust every issue, only every claim. Due to the non-adversarial nature of ERISA proceedings, the Sixth Circuit has indicated that a plaintiff can raise new issues on ERISA appeal. *See Liss v. Fid. Employer Servs. Co.*, 516 F. App'x 468 (6th Cir. 2013) (citing *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 632 (9th Cir. 2008)). However, procedural exhaustion is a different matter.

5

the authority to make the decision the plaintiff seeks. *See Dozier v. Sun Life Assurance Co. of Canada*, 466 F.3d 532, 535 (6th Cir. 2006).

Here, whether exhaustion was required turns on whether Corley's suit was directed to the Plan's legality or merely its interpretation as to him:

> In [cases challenging plan legality across-the-board], the claimant typically concedes that her benefit was properly calculated under the terms of the plan as written, but argues that the plan itself is illegal in some respect. . . . And that question—legality—is one within the expertise of the courts. Sending such a claimant back to the administrative process, to recalculate a benefit she concedes was already properly calculated under the terms of the plan as written, misses the point of the dispute. In that situation, exhaustion wastes resources rather than conserves them.

*Durand*, 560 F.3d at 439. For example, *Goodin v. Innovative Tech. Solutions, Inc.* found that the exhaustion requirement did not apply to a challenge to the elimination of an optional form of benefit—therefore, no amount of administrative review could provide redress. 489 F. Supp. 2d 1157, 1163 (D. Haw. 2007).

After the Sixth Circuit's opinion, Corley's sole surviving claim is that his benefits were calculated in violation of ERISA's anti-cutback provision. He does not concede that his benefit was properly calculated under the Plan, but at least one court has found that this should not be dispositive. *See French v. BP Corp. N. Am.*, CIV.A. 08-216-DLB, 2009 WL 3490428, at *2 (E.D. Ky. Oct. 15 2009) (plaintiff did not concede proper calculation of benefit under the plan, but exhaustion was not required because the action challenged the plan methodology under ERISA). Corley's remaining challenge arises under ERISA and is based upon features of the Plan that apply generally to those who elect to receive a lump sum payment. *Cf. Canada v. Am. Airlines Inc. Pilot Ret. Ben. Program*, 3:09-0127, 2009 WL 2176983, at *6 (M.D. Tenn. July 21, 2009) (pilot challenged the Plan's suspension of benefits provision as to himself and other pilots as violating ERISA's anti-cutback provision). Like the plaintiff in *Canada*, Corley is, "among

6

other things," challenging the use of a certain methodology to calculate his lump sum payment as a violation of the anti-cutback provision. *See id.* at 7; *Traylor v. Avnet, Inc.*, CV-08-0918-PHX-FJM, 2009 WL 383594, at *5 (D. Ariz. Feb. 13, 2009) ("Generally, an anti-cutback claim seeks to enforce specific statutory requirements under ERISA and thus does not require exhaustion.").

Although exhaustion would have undoubtedly been helpful to the Court by developing the record and allowing for detailed analysis of Corley's claims by the Benefits Committee,[6] the Court will excuse exhaustion in this instance in light of *Durand* and its progeny.

III.

Now, finally, the Court must determine whether the Plan's distribution to Corley violated ERISA's anti-cutback rule. To do so the Court must first consider the threshold issue of "whether the benefits payable to Corley under the relevant versions of the Plan constituted 'an early retirement benefit' or 'a retirement-type subsidy' which would be protected from elimination or reduction, or 'an optional form of benefit' which would only be protected from elimination." *Fallin*, 695 F.3d at 517 (citing 29 U.S.C. § 1054(g)(2)(A), (B)). The Court convened an in-person conference regarding the specific benefit calculations under the two versions of the plan on May 21, 2014, and has given the matter considerable thought.

The parties agree on some key facts. First, under the Pre-1998 Plan, Corley at age 56 was entitled to an early retirement subsidy totaling $925.38 per month under any of the optional forms of benefit payable as an annuity. Second, under the Plan as amended, Corley at age 56 remained entitled to the same early retirement subsidy under those optional forms of benefit that

---

[6] The Sixth Circuit noted in *Fallin* that, in its prior review of Corley's claim, the Benefits Committee told Corley that he did not "provide sufficient detail for the Benefits Committee to fully understand [his] assertion that the early retirement factors [were] incorrect." 695 F.3d at 517. *Compare Costantino v. TRW, Inc.*, 13 F.3d 969, 975 (6th Cir. 1994) (excusing exhaustion where the record was well-developed, among other factors). By truncating the administrative review contemplated by the Court, Corley disallowed the Benefits Committee's analysis of his full argument and, in turn, disallowed the development of a full record upon which this Court could conduct its review. *See Durand*, 560 F.3d at 439 ("[Plan a]dministrators, not courts, are the experts in plan administration.").

7

were available under the Pre-1998 Plan. Third, the 1998 amendments to the Plan created a new lump sum distribution option, which was an "optional form of benefit."[7] Finally, Corley elected to receive the lump sum optional form of benefit. The only disputed question is whether Corley is entitled to have his lump sum calculated using an actuarial factor that accounts for his early retirement age.

Although this matter seems complex at first glance, the Court sees its resolution as relatively simple. Corley elected to receive a lump sum payment "in lieu of any other forms of payment." Plan Distribution Form 15572A. He could have elected to receive the normal form benefit—the qualified joint and survivor annuity—or any of the other optional annuity forms provided, all of which would have taken into account his early retirement subsidy. Because that lump sum payment was an optional form of benefit, it was protected only from elimination, not reduction. *See id*. The 1998 amendments *created*, not eliminated, the lump sum payment option.[8]

Corley has not argued that the Plan's calculation for the optional form of benefit was inaccurate in any other way. The benefits paid appear to be correct.

Being otherwise sufficiently advised,

---

[7] Under the Pre-1998 Plan, a participant with vested retirement benefits with a present value of $20,000 or less could elect to receive a lump sum distribution. This option was retained in the Plan as amended, and the terms of its distribution were much different than the newly-created lump sum payment option. *See* ECF No. 76-11, Aleris 35.

[8] Further, the Court notes that finding a violation of the anti-cutback rule would seem to conflict with the Sixth Circuit's determination that the lump sum payment's exclusion of the early retirement subsidy comported with the applicable Treasury Department regulation, 26 C.F.R. § 1.411(a)-11(a)(2). The Sixth Circuit determined:
> If a plan specifically provides that the lump-sum payment 'is the present value of the subsidized early retirement annuity benefit[,]' then the plan must include the value of the early-retirement subsidy in the payment. But if a plan instead defines the early-retirement benefit as 'the present value of the normal retirement annuity benefit'—*which is what this plan does*—then it need not include the subsidy.

*Fallin*, 695 F.3d at 516 (citing 26 C.F.R. § 1.411(a)-11(a)(2); *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 983 (6th Cir. 2000)) (emphasis added). Finding that the Plan violated the anti-cutback rule would therefore call into question the Treasury Department regulation itself.

IT IS HEREBY ORDERED that Defendants' motion to dismiss is SUSTAINED and Corley's claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Corley's motion for summary judgment is DENIED.

This is a final order.

Date:

cc: Counsel of Record